## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ASHLEY MYERS, individually and as Co-Personal Representative of the Estate of Lorri Gayle Tedder; and<br><br>COURTNEY VAUGHN, individually and as Co-Personal Representative of the Estate of Lorri Gayle Tedder,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS OF ROGERS COUNTY, *et al.*,<br><br>　　　　　Defendants. | Case No. 22-CV-119-TCK-JFJ |

## OPINION AND ORDER

This case arises from November 2019 death of Lorri Gayle Tedder (Tedder), a pretrial detainee who was being held in custody at the Amos G. Ward Detention Center in Rogers County, Oklahoma. Plaintiffs Ashley Myers and Courtney Vaughn (Plaintiffs), both individually and in their capacity as co-personal representatives of the Tedder's estate, filed their Second Amended Complaint (Complaint) on April 13, 2022, asserting eight claims for relief against 15 separate defendants. (Doc. 20). Two of the defendants, namely Turn Key Health Clinics, LLC, (Turn Key), and Kylee Foster (Foster, collectively Defendants), have moved to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6). (Docs. 22, 23). Plaintiffs filed a response to each motion, (Docs. 25, 26), and Defendants each filed a reply, (Docs. 27, 28).

### I. BACKGROUND

According to the Complaint, on November 7, 2019, Tedder was taken into custody by the Catoosa Police Department for non-violent but erratic behavior at the Hard Rock Casino. (Doc. 20

at ¶ 33). Tedder was eventually booked at the Amos G. Ward Detention Center in Rogers County, Oklahoma at approximately 8:00 a.m. on the morning of November 7. (*Id.* at ¶¶ 35, 36). Throughout her arrest and detention, Tedder was incoherent and evincing signs of intoxication or suffering from a severe mental health crisis. (*Id.* at ¶¶ 41-43). In particular, Tedder was unable to stand on her own accord and making delusional statements, such as "God is the King and I am the Queen." (*Id.* at ¶¶ 41, 48). When Tedder was taken to the showers during the booking process, she had soiled herself and was covered in feces. (*Id.* at ¶ 44). However, despite these clear manifestations of severe intoxication/mental distress, the Complaint alleges that Tedder did not receive an adequate, if any, medical or mental health screening during her detention. (*Id.* at ¶ 53).

At some point, Tedder was placed in a restraint chair in the detention center, where she remained until approximately 6:15 p.m. on November 7. (*Id.* at ¶ 66). After removal from the restraint chair, Tedder's head had been slammed into a glass window, resulting in a deep laceration on her forehead. (*Id.* at ¶ 72). Tedder was taken to the ground and laid in a prone position with jailers exerting force to her back, ribs, and legs by kneeling on Tedder's back and legs. (*Id.* at ¶¶ 67-76). As she was pinned to the ground, the jailers covered her face with a spit mask—a mask that was improperly placed such that Tedder's eyes, nose, and mouth were covered, thereby impairing her vision and breathing. (*Id.*) The Complaint alleges that Tedder was held in this manner for more than four minutes, during which time Tedder had alerted the jailers that she could not breathe. (*Id.* at ¶¶ 91, 128). After being held down, Tedder eventually ceased moving and urinated herself, as she became unconscious, and the Complaint states that she was unconscious for nearly eight minutes before any cardiopulmonary resuscitation (CPR) efforts were made. (*Id.* at ¶¶ 124, 131).

The Complaint states that it is well known in law enforcement and medical communities that holding a person in a prone position for long periods of time is dangerous and that compression on the back and abdomen can result in asphyxiation. (*Id.* at ¶¶ 100-01). Despite this ubiquitous understanding, the Complaint alleges that Defendant Foster—a licensed practical nurse (LPN), employed by Turn Key to provide medical assistance at the Amos G. Ward Detention Center—witnessed Tedder being held in the prone position and struggling to breath, but she did not provide any assistance to Tedder. (*Id.* at ¶¶ 14, 123). Though Foster cleaned Tedder's urine from the floor with paper towels, she did not check on Tedder's condition as she lay in the prone position. (*Id.* at ¶ 129). Rather, only a cursory check of Tedder's pulse was performed by placing a finger on the back of Tedder's neck and affirming "I think" that she is breathing, causing another jailer to retort that Tedder was "just playing games." (*Id.* at ¶¶ 129, 132-33). In fact, after observing Tedder urinating herself, being unable to stand or walk, having open eyes with no pupil dilation or blinking, and not breathing, the Complaint states that Foster left the area without leaving medical instruction to the jailers or consulting an outside medical provider. (*Id.* at ¶ 163). When officers did eventually initiate CPR, the chest compressions were performed incorrectly, and Foster did not intervene to perform the compressions or give instructions regarding proper technique. (*Id.* at ¶¶ 168-71). Foster did, however, place the automated external defibrillator (AED) on Tedder, at which point, Foster allegedly turned and said, "She's [expletive] dead." (*Id.* at ¶ 174). Tedder was ultimately transported by ambulance to a hospital, where she stayed until she was pronounced dead on November 9, 2019. (*Id.* at ¶¶ 175-76).

From these facts, Plaintiffs maintain that Foster either knew of Tedder's acute respiratory distress and failed to render proper treatment or did not know of the danger posed to Tedder because she was poorly trained by her employer. (*Id.* at ¶¶ 164-65). While the Complaint asserts

3

eight claims against fifteen different defendants, it levies three of its claims against Foster, namely: 1) negligent medical treatment, actionable under the Oklahoma Government Tort Claim Act (OGTCA); 2) deliberate indifference to serious medical need in violation of 42 U.S.C. § 1983; and 3) failure to intervene to prevent the use of excessive force in violation 42 U.S.C. § 1983. (*Id.* at ¶¶ 236-40, 245-65, 410-18). The Complaint also asserts claims against Foster's employer, Defendant Turn Key, which is an Oklahoma limited liability corporation that is independently contracted by the Rogers County Sheriff, Scott Walton, and the Rogers County Jail Administrator, Kellie Guess, to provide medical services at the Amos G. Ward Detention Center. (*Id.* at ¶¶ 4-6). Specifically, the Complaint asserts that Turn Key was negligent in its hiring, retention, training, and supervision; and Turn Key was deliberately indifferent in its capacity as final decisionmaker regarding municipal policy, under a *Monell* theory of municipal liability. (*Id.* at ¶¶ 334-409).

Turn Key filed a motion to dismiss, raising three broad challenges to the Complaint, namely: 1) Plaintiffs fail to state a claim for relief against Turn Key; 2) Plaintiffs lack standing to bring individual claims against Turn Key; and 3) Turn Key is immune from liability under the OGTCA. (Doc. 22). Likewise, Foster filed a motion to dismiss, raising three similar challenges to the Complaint. (Doc. 23). In response to the motions, Plaintiffs concede their individual capacity claims as well as its claim regarding Foster's failure to intervene against the use of excessive force. (Docs. 25 at 1; 26 at 2). Plaintiffs do, however, contest Defendants' assertion that the Complaint fails to state a claim against Defendants and that Foster and Turn Key are immune from liability under the OGTCA. Accordingly, all claims made in Plaintiffs' individual capacity are dismissed, and Plaintiffs' claim against Foster for the failure to intervene against the use of force is also dismissed. The Court now turns to the contested issues raised in the motions to dismiss.

4

## II.  LEGAL STANDARDS

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) (internal citations omitted). A complaint is legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted) (alteration original). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

## III. DISCUSSION

Defendants argue that Plaintiffs fail to state a § 1983 claim because the Complaint fails to establish a connection between Tedder's alleged injuries and the conduct of Turn Key and its employee, Defendant Foster. (Docs. 22 at 11-15; 23 at 10-15). Moreover, Defendants argue that the Complaint fails to establish that Turn Key or Foster subjected Tedder to any constitutional

5

deprivation. (Docs. 22 at 26-30; 23 at 15-19). Turn Key additionally argues that the Complaint does not sufficiently allege a specific Turn Key policy that was the moving force behind Tedder's constitutional deprivations. (Doc. 22 at 16-25). With respect to Plaintiffs' negligence claims, Defendants maintain that they are immune from liability under Okla. Stat. tit. 51 § 155(25) of the OGTCA, (Docs. 22 at 32-35; 23 at 21-24), and that the Complaint does not sufficiently establish Foster as the legal cause of Plaintiffs' negligence claim. (Doc. 23 at 25-27). The Court disagrees.

Although Defendants raise numerous challenges to the Complaint, stripped to the studs, Defendants are essentially attacking the sufficiency of Plaintiffs' factual allegations. Yet, Defendants' arguments are belied by the 91 pages and 434 paragraphs of the Complaint. The pleading requirements under Fed. R. Civ. P. 8 demand only that a defendant be given fair notice of what the claims are and the grounds upon which they rest. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). The Complaint goes above and beyond what is required under Rule 8 and leaves nothing to the imagination regarding Plaintiffs' claims against Defendants. That is to say, the Complaint pleads sufficient factual content to support Plaintiffs' § 1983 and negligence claims against Defendants.

Further, the issue of immunity under the OGTCA turns on whether the allegedly tortious conduct rises to the level of bad faith, and thus, falls outside the scope of Defendants' employment. *Mustain v. Grand River Dam Auth.*, 2003 OK 43, ¶ 21, 68 P.3d 991, 999 ("An employee whose acts are malicious, willful, wanton and in bad faith is not acting in the scope of his employment."). Despite overtures that Defendants' "cursory search" of the Complaint failed to yield factual allegations sufficient to establish bad faith by Turn Key or its employees, (Docs. 27 at 9; 28 at 10), as discussed above, a more probing search reveals that Plaintiffs have sufficiently pleaded facts to plausibly infer that Defendants acted with deliberate indifference toward Tedder's medical need,

which is tantamount to acting with reckless disregard. Whether that reckless disregard rises to the level of bad faith, such that it falls outside the ambit of OGTCA immunity, is an issue of fact that "cannot properly be determined in a motion to dismiss." *Smith v. Allbaugh*, 2020 WL 889165, at *9 (W.D. Okla. Feb. 24, 2020), *rev'd on other grounds*, 987 F.3d 905 (10th Cir. 2021) (quoting *Pendergraft v. Bd. of Regents of Okla. Colls.*, 2019 WL 3806639, at *6 (W.D. Okla. Aug. 13, 2019)). Accordingly, Defendants' motions to dismiss are DENIED, except as to the issues that Plaintiffs have conceded.

## IV. CONCLUSION

Plaintiffs have conceded all claims in their individual capacity and the claim against Defendant Kylee Foster for failure to intervene against the use of excessive force, and therefore, those claims are **DISMISSED**. However, based on the foregoing, the Court finds that the Second Amended Complaint (Doc. 20) sufficiently alleges facts to support all of Plaintiffs' remaining claims against Defendants Kylee Foster and Turn Key Health Clinics, LLC. Accordingly, the motions to dismiss filed by Defendant Turn Key Health Clinic, LLC, (Doc. 22), and Defendant Kylee Foster, (Doc. 23), are **DENIED**.

**SO ORDERED** this 11th day of January 2023.

TERENCE C. KERN
United States District Judge